# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| JILL ALBAN, GRANT ALBAN, MARY ARNOLD, AL BAKER, KATRINA BONAR, STEVEN BRUZONSKY, MONICA BUSHEY, MELINDA DENEAU, JENNIFER DILLON, JEFFREY L. GANNON, PAMELA GOESSLING, THOMAS GOESSLING, SHERYL HALEY, LESLEY DENISE HART, BRUCE HERTZ, MARIA KOOKEN, KORI LEHRKAMP, MICHAEL LEHRKAMP, JOHN LEVYA, ADAIR LARA, DANIEL MORRIS, JUDY A. REIBER, RICHARD TOMASKO, JOHN O'NEILL JOHNSON TOYOTA, RUSH TRUCK CENTERS OF ARIZONA, INC., *on behalf of themselves and all others similarly situated,* | **Civil Action Number: 3:20cv00342**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| v. | |
| KAWASAKI KISEN KAISHA, LTD., "K" LINE AMERICA, INC., AND THEIR AFFILIATES | |
| Defendants. | |

**COMPLAINT**

1. Plaintiffs Jill Alban, Grant Alban, Mary Arnold, Al Baker, Katrina Bonar, Steven Bruzonsky, Monica Bushey, Melinda Deneau, Jennifer Dillon, Jeffrey Gannon, Pamela Goessling, Thomas Goessling, Sheryl Haley, Lesley Denise Hart, Bruce Hertz, Maria Kooken, Adair Lara, Kori Lehrkamp, Michael Lehrkamp, John Levya, Daniel Morris, Judy Reiber, Richard Tomasko, John O'Neill Johnson Toyota, LLP, Rush Truck Centers of Arizona, Inc. (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" as defined below), bring this class action complaint for breach of contract against Defendants Kawasaki Kisen Kaisha, Ltd., "K" Line America, Inc., and their affiliates (collectively, the "K Line Defendants" or "Defendants").

2. The Court should order the K Line Defendants to honor their settlement agreement with Plaintiffs and award the members of the Class all monetary damages to which they are entitled under the settlement agreement as well as all other appropriate relief. Plaintiffs claim and allege as follows:

**INTRODUCTION**

3. This case arises from the K Line Defendants' breach of their clear and unambiguous settlement agreement with Plaintiffs.

4. This agreement followed Defendants' participation in a systematic, global conspiracy to fix, raise, maintain and/or stabilize prices and to allocate the market and customers for "Vehicle Carrier Services."[1] To obtain relief and hold the conspirators accountable for the harm

---

[1] Vehicle carriers transport large numbers of cars, trucks, and other automotive vehicles, including agriculture and construction equipment, across large bodies of water using specialized cargo ships known as Roll On/Roll Off vessels ("RoRos"). "Vehicle Carrier Services" refers to the paid ocean transportation of new, assembled motor vehicles by RoRo.

2

caused by their scheme, Plaintiffs, on behalf of the Class, filed suit under state and federal antitrust law.

5. The parties (Plaintiffs and the K Line Defendants) agreed to a settlement and memorialized their agreement in a signed Memorandum of Understanding ("MOU") executed on July 23, 2015. Under the MOU's terms, the K Line Defendants agreed to provide monetary compensation to the Class in exchange for the release of "claims [members of the Class] have asserted or may have asserted related to the sale of Vehicle Carrier Services."

6. Critically, the parties expressly recognized that the MOU was effective and binding on July 23, 2015—irrespective of any subsequent occurrence, whether favorable or unfavorable. Specifically, the MOU declared that it was a "binding agreement" that would remain "effective . . . regardless of . . . events materially adverse to [P]laintiffs, K Line, or any of the other parties." And yet, the K Line Defendants refused to honor their obligations under the MOU after a federal district court granted a motion to dismiss Plaintiffs' antitrust claims.

7. Because the K Line Defendants breached the MOU, Plaintiffs and the other members of the Class have suffered and will continue to suffer substantial injuries. For themselves and on behalf of the Class, Plaintiffs seek a judgment requiring the K Line Defendants to honor their contractual obligations and compensate Plaintiffs for the damages arising from Defendants' misconduct.

**PARTIES**

**I.**   **Plaintiffs**

8. Jill Alban is a Montana resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Alban was one of the plaintiffs who entered into the MOU, which Defendants breached.

9. Grant Alban is a Montana resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Alban was one of the plaintiffs who entered into the MOU, which Defendants breached.

10. Plaintiff Mary Arnold is a Tennessee resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Arnold was one of the plaintiffs who entered into the MOU, which Defendants breached.

11. Plaintiff Al Baker is a North Dakota resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Baker was one of the plaintiffs who entered into the MOU, which Defendants breached.

12. Plaintiff Katrina Bonar is a West Virginia resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Bonar was one of the plaintiffs who entered into the MOU, which Defendants breached.

13. Plaintiff Steven Bruzonsky is an Arizona resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Bruzonsky was one of the plaintiffs who entered into the MOU, which Defendants breached.

14. Plaintiff Monica Bushey is a Maine resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Bushey was one of the plaintiffs who entered into the MOU, which Defendants breached.

15. Melinda Deneau is a New Hampshire resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Deneau was one of the plaintiffs who entered into the MOU, which Defendants breached

16. Plaintiff Jennifer Dillon is a Michigan resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Dillon was one of the plaintiffs who entered into the MOU, which Defendants breached.

17. Plaintiff Jeffrey L. Gannon is a Kansas resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Gannon was one of the plaintiffs who entered into the MOU, which Defendants breached.

18. Plaintiff Pamela Goessling is a Missouri resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Goessling was one of the plaintiffs who entered into the MOU, which Defendants breached.

19. Plaintiff Thomas Goessling is a Missouri resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Goessling was one of the plaintiffs who entered into the MOU, which Defendants breached.

20. Plaintiff Sheryl Haley is a Utah resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Haley was one of the plaintiffs who entered into the MOU, which Defendants breached.

21. Plaintiff Lesley Denise Hart is a South Carolina resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Hart was one of the plaintiffs that entered into the binding settlement agreement with Defendants, which Defendants breached.

22. Plaintiff Bruce Hertz is a Florida resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Hertz was one of the plaintiffs who entered into the MOU, which Defendants breached.

23. Plaintiff Maria Kooken is a Nebraska resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Kooken was one of the plaintiffs who entered into the MOU, which Defendants breached.

24. Plaintiff Adair Lara is a California resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Lara was one of the plaintiffs who entered into the MOU, which Defendants breached.

25. Plaintiff Kori Lehrkamp is a South Dakota resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Lehrkamp was one of the plaintiffs who entered into the MOU, which Defendants breached.

26. Plaintiff Michael Lehrkamp is a South Dakota resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Lehrkamp was one of the plaintiffs who entered into the MOU, which Defendants breached.

27. Plaintiff John Levya is a Nevada resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Levya was one of the plaintiffs who entered into the MOU, which Defendants breached.

28. Plaintiff Daniel Morris is an Oregon resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Morris was one of the plaintiffs who entered into the MOU, which Defendants breached.

29. Plaintiff Judy A. Reiber is a Minnesota resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Ms. Reiber was one of the plaintiffs who entered into the MOU, which Defendants breached.

30. Plaintiff Richard Tomasko is a Vermont resident who purchased Vehicle Carrier Services indirectly from one or more Defendants or their co-conspirators. Mr. Tomasko was one of the plaintiffs who entered into the MOU, which Defendants breached

31. Plaintiff John O'Neill Johnson Toyota ("Johnson Toyota") is a Mississippi limited liability company with its principal place of business in Meridian, Mississippi. Johnson Toyota is an authorized Toyota dealer that bought Toyota-brand vehicles shipped via RoRo by one or more of the Defendants or their co-conspirators from the vehicles' country of origin to the United States. Johnson Toyota was one of the plaintiffs who entered into the MOU, which Defendants breached.

32. Plaintiff Rush Truck Centers of Arizona ("Rush AZ") is a Delaware corporation with its principal place of business in Arizona. Rush AZ is an authorized Peterbilt and Hino Ford dealer that bought vehicles that were shipped via RoRo by one or more of the Defendants or their co-conspirators from the vehicles' country of origin to the United States. Rush AZ was one of the plaintiffs who entered into the MOU, which Defendants breached.

## II. Defendants

33. Defendant Kawasaki Kisen Kaisha, Ltd. ("K Line") is a Japanese company with its principal place of business at 1-1, Uchisaiwaicho 2-chome, Chiyoda-ku, Tokyo 100-8540. K Line's subsidiaries act as its agents in the United States. K Line—directly and/or through its subsidiaries, which it wholly owned and/or controlled—shipped new, assembled motor vehicles to and from the United States. K Line—directly and/or through its subsidiaries, which it wholly owned and/or controlled—provided, marketed, and/or sold Vehicle Carrier Services throughout the United States. K Line facilitated and/or implemented the secret agreement and/or agreements among the conspirators. K Line was a party to the MOU and repudiated it.

34. Defendant "K" Line America, Inc. ("K Line America"), a Michigan corporation, is a wholly owned subsidiary of K Line. Its principal place of business is 4860 Cox Road, Suite 300, Glen Allen, Virginia 23060. It acts as K Line's agent in the United States. At all relevant times, its activities in the United States were under the control and direction of K Line, which controlled its policies, sales, and finances. K Line America shipped new, assembled motor vehicles to and from the United States. K Line America also provided, marketed, and/or sold Vehicle Carrier Services throughout the United States. K Line America facilitated and/or implemented the secret agreement and/or agreements among the conspirators. K Line America was a party to the MOU and repudiated it.

## JURISDICTION AND VENUE

35. This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because at least one plaintiff is a citizen of a different state than at least one defendant for purposes of subject matter jurisdiction, because there are more than 100 members of the proposed class, and because the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees.

36. This Court has personal jurisdiction over Defendant K Line because K Line transacts business in Virginia. Among other things, Defendant K Line interacts with its affiliate, K Line America, in Virginia and the parts within this District to obtain the certifications and permits necessary to provide Vehicle Carrier Services to the United States. Plaintiffs allege, subject to a reasonable opportunity for further investigation or discovery, that in connection with this and other interactions with K Line America, Defendant K Line has attended meetings in Virginia to supervise and coordinate operations and has communicated with K Line America about the MOU and the decision to refuse to honor it. K Line and its agents negotiated and agreed to (and later

8

repudiated) the MOU's terms in Virginia and parts within this District. This Court's exercise of jurisdiction over K Line is consistent with due process.

37. This Court has personal jurisdiction over Defendant K Line America because it is headquartered at 4860 Cox Road, Suite 300, Glen Allen, Virginia 23060. Defendant K Line America's agents also negotiated and agreed to the MOU's terms in Virginia and parts within this District. This Court's exercise of jurisdiction over K Line America is consistent with due process.

38. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants provide Vehicle Carrier Services to this state and District. Defendants have thus conducted extensive business within this District. Their decisions concerning their obligations under the MOU as well as a material part of the actions leading to the breach of the MOU would have been made and discussed, at least in part, in this District. Alternatively, venue is proper under 28 U.S.C § 1391(b)(3) because all of the K Line Defendants are subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

**A. Plaintiffs have not received a single dollar to compensate them for the injuries caused by the K Line Defendants—even though the K Line Defendants have admitted their guilt and paid hundreds of millions of dollars in fines.**

39. This breach of contract action arises out of a massive, international conspiracy to fix prices, allocate customers, and restrict capacity for Vehicle Carrier Services. The conspiracy caused Plaintiffs, who are American consumers and businesses, to pay higher prices than they otherwise would have in a competitive market for Vehicle Carrier Services for cars and trucks shipped to the United States.

40. The conspiracy in which the K Line Defendants engaged was not some loosely defined or speculative scheme. ***On the contrary, the K Line Defendants pleaded guilty to violating***

9

*federal law, admitting that they "participated in a conspiracy among ocean carriers of roll-on, roll-off cargo, the primary purpose of which was to suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services . . . in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."* The United States Department of Justice, the Japanese Fair Trade Commission, and the European Commission have fined the K Line Defendants and their co-conspirators hundreds of millions of dollars for fixing prices for Vehicle Carrier Services. Around the world, the K Line Defendants and their co-conspirators have paid well over $500 million to various regulatory and law enforcement bodies.

41. Neither the K Line Defendants nor any of their co-conspirators have paid a single dollar to Plaintiffs in this action or to any American consumer the K Line Defendants injured. Consequently, and despite the injuries that the conspiracy inflicted, Plaintiffs have gone completely uncompensated.

42. Plaintiffs filed class actions on behalf of various indirect purchasers of Vehicle Carrier Services for damages and injunctive relief under federal and state antitrust statutes. On October 8, 2013, the Judicial Panel on Multi-District Litigation transferred related actions to the District of New Jersey for consolidated pretrial proceedings.

**B. The K Line Defendants chose to settle and executed the MOU.**

43. After months of negotiation, Plaintiffs and the K Line Defendants entered into an MOU to settle the antitrust litigation. The MOU was effective July 23, 2015.

44. Faced with substantial evidence of their misconduct, including a guilty plea from the "team leader and general manager in K Line's car carrier division," the K Line Defendants made the strategic decision to manage their risk by settling with Plaintiffs. Under the terms of the MOU, the K Line Defendants would provide members of the Class with monetary compensation,

and in exchange, Plaintiffs and the members of the Class would release the K Line Defendants "from claims they have asserted or may have asserted related to the sale of Vehicle Carrier Services."

45. The K Line Defendants elected to pay a lump sum of money to avoid the risk of a jury learning of their misconduct and deciding their liability. The MOU protected the K Line Defendants from paying a higher amount if Plaintiffs prevailed at trial or if subsequent developments increased the K Line Defendants' liability.

46. The MOU required the K Line Defendants to place the settlement funds in escrow within 30 days of the effective date of the MOU, that is, by August 22, 2015.

47. The parties' obligations to perform under the MOU were binding whether or not they or the other defendants prevailed in the antitrust litigation and whether or not the parties ever executed a more detailed long-form settlement agreement. The MOU provided, in pertinent part:

> [T]he parties intend this MOU to be a binding agreement effective as of the date set forth above[2] regardless of whether the long-form settlement agreement is ever executed and regardless of the occurrence of any decisions, developments or events materially adverse to plaintiffs . . . .

48. The MOU obligated the K Line Defendants to pay the agreed-upon amounts in accordance with its terms.

49. When the K Line Defendants agreed to this language, they had already moved to dismiss Plaintiffs' lawsuit. In fact, the effective date of the MOU was the same day that counsel for the K Line Defendants and Plaintiffs argued the K Line Defendants' motion before the district court.

---

[2] Per the MOU, that date was July 23, 2015.

50. When they executed the MOU, the K Line Defendants knew that they might prevail on their motion to dismiss, yet they made the conscious decision to settle.

**C. The K Line Defendants refused to honor their contractual commitments.**

51. After the signing of the MOU, the K Line Defendants were obligated to pay Plaintiffs the agreed-upon monies. In fact, the MOU declared that counsel signing the MOU on behalf of the K Line Defendants were "duly authorized to execute the MOU and make it binding" upon the K Line Defendants. Thus, the K Line Defendants' duty to pay Plaintiffs existed even if the K Line Defendants' board of directors did not formally approve the settlement. Nonetheless, on information and belief, the board of directors for the K Line Defendants did in fact approve payment to Plaintiffs.[3]

52. However, the K Line Defendants never placed into escrow the sums required by the MOU. Because the required sums were not placed into escrow, they could not be distributed to members of the Class, who remain uncompensated for the injuries sustained as a result of the K Line Defendants' misconduct.

53. By failing to place these sums into escrow by August 22, 2015, the K Line Defendants breached their contractual duties under the MOU.

54. After the K Line Defendants had breached the MOU, the district court granted K Line and the other defendants' motion to dismiss the federal antitrust case on August 28, 2015.

55. In February 2017, Plaintiffs notified the K Line Defendants multiple times of their duty to fulfill their obligations under the MOU and asked them to confirm their prior bargained-for-promise. They refused to honor their commitments, notwithstanding the clear language in the

---

[3] In the alternative, if the K Line Defendants failed to seek board approval, and such approval was required, the covenant of good faith and fair dealing would have been breached.

MOU spelling out their duty to comply with the agreement "regardless of any decisions, developments or events materially adverse to plaintiffs."

## CLASS ACTION ALLEGATIONS

56. Plaintiffs seek all available legal and equitable relief under Rule 23(a), (b)(2), and (b)(3) for themselves and on behalf of the following class (the "Class"):

> All persons and entities in the United States in the End-Payor, the Truck and Equipment Dealer, and the Automobile Dealer Damages Classes as defined in the class action complaints filed in *In re: Vehicle Carrier Services Antitrust Litigation*, MDL No. 2471, No. 13-3306 (D.N.J.).

57. Excluded from the Class are (a) Defendants; (b) their parent companies, subsidiaries, and affiliates; (c) any co-conspirators; (d) federal governmental entities and instrumentalities of the federal government; (e) states and their subdivisions, agencies, and instrumentalities; and (f) persons who purchased Vehicle Carrier Services directly.

58. While Plaintiffs do not know the exact number of Class members, Plaintiffs believe there are, at a minimum, thousands.

59. Common questions of law and fact exist as to all members of the Class. Such questions include:

   (a) whether the MOU constituted a valid, binding contract between Defendants and Plaintiffs and members of the Class;

   (b) whether K Line paid the sums agreed to in the MOU;

   (c) whether the K Line Defendants breached their contract with Plaintiffs and members of the Class;

   (d) whether the K Line Defendants breached their covenant of good faith and fair dealing;

(e) whether injunctive and related equitable relief, including specific performance of the contract, is appropriate;

(f) how class-wide damages should be measured; and

(g) the monetary value of the damages suffered by the Class.

60. Plaintiffs' claims are typical of those of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs and each member of the Class did not obtain the benefit of their bargain with the K Line Defendants under the MOU. Therefore, Plaintiffs and the members of the Class have been similarly affected by the K Line Defendants' wrongful conduct.

61. Plaintiffs' claims arise out of the same course of conduct giving rise to the claims of the other members of the Class—that is, the K Line Defendants' breach of the MOU by failing to pay the promised funds. Plaintiffs' interests are not antagonistic to those of the other members of the Class. Plaintiffs are represented by counsel who are competent and experienced in the complex breach of contract and class action litigation.

62. The questions of law and fact common to the members of the Class (including the legal and factual issues described above) predominate over any questions affecting only individual members.

63. Class action treatment is a superior method for the fair and efficient adjudication of this controversy. Among other things, a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the inefficient duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons with a method for obtaining redress for claims that might be impracticable to pursue

individually, substantially outweigh any minor difficulties that may arise in management of this class action.

64. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications and so of establishing incompatible standards of conduct for Defendants.

### CAUSE OF ACTION: BREACH OF CONTRACT

65. Plaintiffs repeat every allegation set forth above as if fully set forth herein.

66. By executing the MOU, Plaintiffs and the K Line Defendants entered into a valid, binding, and enforceable contract.

67. The K Line Defendants agreed to pay a sum certain; in exchange, Plaintiffs agreed to dismiss their antitrust claims against the K Line Defendants, and the members of the Class agreed not to file any lawsuits asserting claims related to the sale of Vehicle Carrier Services. Plaintiffs' and the Class members' promises in the MOU constituted fair consideration for the K Line Defendants' promise to pay.

68. All conditions precedent, if any, to Plaintiffs' claims under the MOU have been performed, have otherwise occurred, or have been excused.

69. Defendants breached their contractual duties, including their covenant of good faith and fair dealing, by refusing to pay the agreed-upon monies within thirty days of the effective date of the MOU.

70. To the extent that the K Line Defendants assert that board approval was necessary to make their promise binding (a position that is contrary to the MOU's terms) and that they failed to secure board approval (which, on information and belief, is also untrue), any lack of board approval does not obviate their duty to pay the agreed-upon sum of money. If the K Line

15

Defendants failed to secure board approval, their failure to take steps to do so breached their covenant of good faith and fair dealing. Any such failure to follow through with their unambiguous promises was either done arbitrarily or unfairly and/or resulted from their dishonest representation that board approval would be secured.

71. These breaches damaged Plaintiffs in an amount exceeding this Court's minimum jurisdictional requirements.

72. Plaintiffs are entitled to their contract damages, plus pre- and post-judgment interest and the fees and costs incurred in bringing this suit and bringing Defendants into compliance with their contractual obligations.

73. K Line's breach of its duties under the MOU entitles Plaintiffs to specific performance of the MOU. The value of that performance exceeds this Court's minimum jurisdictional requirements.

## JURY DEMAND

74. Plainitffs demand a jury trial.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of the Class, respectfully request that this Court enter judgment in their favor and award relief as follows:

- all damages to which Plaintiffs and the members of the Class are entitled, including but not limited to compensatory damages, consequential damages, pre- and post-judgment interest, fees and costs of this suit, and all other sums allowed by law;

- specific performance of the contract; and

- such other relief that this Court deems appropriate.

Dated: May 13, 2020

/s/ Daniel Cohen
Daniel Cohen (VSB# 79836)
Jonathan W Cuneo
R. Michael Smith (VSB# 29600)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave, NW, Ste. 200
Washington, DC 20016
Telephone (202) 789-3960
danielc@cuneolaw.com
Jcuneo@cuneolaw.com
mike@cuneolaw.com

Warren T. Burns
Daniel H. Charest
Will Thompson
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com

Korey A. Nelson
Patrick D. Murphree
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com

Adam J. Zapala
Elizabeth Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
etran@cpmlegal.com

Alexander E. Barnett
**COTCHETT, PITRE & McCARTHY, LLP**
40 Worth Street
10th Floor
New York, New York 10013
Telephone: (212) 201-6820
Facsimile: (917) 398-7753
abarnett@cpmlegal.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
404 Court Square
P.O. Box 927
Lexington, Mississippi 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

J. Manly Parks
**DUANE MORRIS LLP**
30 S 17th Street
Philadelphia, Pennsylvania 19103
Telephone (215) 979-1000
Facsimile (215) 979-1020
jmparks@duanemorris.com

17